IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GLYNIS H. WRIGHT; JANILLE TURNER; individually and on behalf of themselves and all others similarly situated, | * * * * * | |
| | * | Civil Action No. 10-397 |
| Plaintiffs, | * | |
| versus | * * | |
| BP, plc; BP PRODUCTS NORTH AMERICA, INC.; BP AMERICA, INC.; BP EXPLORATION & PRODUCTION, INC.; AND NALCO COMPANY, | * * * * * | *Trial By Jury Requested* |
| Defendants. | * | |

## CLASS ACTION COMPLAINT

### I.   INTRODUCTION

1. Plaintiffs Glynis H. Wright and Janille Turner (hereinafter "Plaintiffs"), individually and as representatives of the class defined herein (the "Class" or "Class Members"), bring this action against the defendants identified below ("Defendants"), and avers as follows:

2. This is a class action, brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, to recover compensatory and punitive damages for the personal injuries and property damages sustained by the Plaintiffs and the Class Members as a result of the Defendants' use of toxic dispersant chemicals in their oil spill remediation activities.

3. Since the Deepwater Horizon explosion on April 20, 2010 and the subsequent oil spill, millions of gallons of crude oil have invaded the water column of the Gulf of Mexico, its white sandy beaches and the fertile fishing grounds throughout the region. In attempting to avoid additional financial responsibility in shoreline restoration, the Defendants attempted to conceal the Deepwater Horizon oil spill by sinking the oil to the bottom of the ocean with toxic

chemical dispersants. In the process, the Defendants have negligently, willfully and callously caused those dangerous toxic chemicals to enter and be released upon the Plaintiffs and the Class Members, their property and their person, causing them to be injured and damaged. These chemical dispersants have damaged, and will continue to damage, the Plaintiffs and the Class Members' person and real and personal property.

## II.   JURISDICTION

4.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and because it is a class action brought by the citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business.

5.   Prosecution of this action in this district is proper under 28 U.S.C. § 1391(a)(2) because a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in the district and/or a substantial part of the property at issue in this action is situated in this district.

## III.   PARTIES

6.   Plaintiff Janille Turner is over the age of 19 years and is a resident of Coden, Mobile County, Alabama. Plaintiff is a resident and property owner along the Gulf Coast, and as a result of the events described herein, has suffered damages that are more fully described below.

7.   Plaintiff Glynis H. Wright is over the age of 19 years and is a resident of Orange Beach, Baldwin County, Alabama. Plaintiff is a resident and property owner along the Gulf Coast, and as a result of the events described herein, has suffered damages that are more fully described below.

8.   The Defendants herein are:

    **a.** BP, plc ("BP" or "BP Defendants"), a foreign corporation doing business in the State of Alabama and within this district;

    **b.** BP Products North America, Inc. ("BP Products" or "BP Defendants"), a foreign corporation doing business in the State of Alabama and within this district;

    **c.** BP America, Inc. ("BP America" or "BP Defendants"), a foreign corporation doing business in the State of Alabama and within this district;

    **d.** BP Exploration & Production, Inc. ("BP Exploration" or "BP Defendants"), a foreign corporation doing business in the State of Alabama and within this district; and

    **e.** Nalco Company (Nalco), a foreign corporation doing business in the State of Alabama and within this district.

## IV. FACTUAL ASSERTIONS

9. On April 20, 2010, the Deepwater Horizon, an oil rig in the Gulf of Mexico, exploded and caught fire. The rig burned for two days before completely capsizing into the ocean. As the Deepwater Horizon sank, it broke off the riser connecting it to the Macondo well, leaving the severed pipe leaking oil out of its now-open end as well as through two breaks along its length.

10. Since April 20, 2010, millions of gallons of oil have invaded the Gulf's water column, washed up on Alabama's shores and penetrated precious inlets and bays up and down the Gulf Coast. As a result, the oil spill has closed the Gulf's fertile fishing grounds – primarily along and around the Gulf States. The environment, as well as fishing and tourist businesses that

rely on the Gulf's white sandy beaches, clear waters, seafood and fertile fishing grounds, have been devastated from the spill.

11. At all times material hereto and upon information and belief, the Defendants have managed and directed oil remediation efforts in the Gulf of Mexico.

12. As part of their remediation efforts, the BP Defendants have instituted the use of toxic chemical dispersants. These chemicals are designed to sink and break up crude oil in the Gulf's waters but are hazardous to humans and marine life on the Gulf Coast.

13. One such toxic chemical dispersant, Corexit® 9500, is four times more toxic than the oil itself causing an even more dangerous condition to exist in the Gulf of Mexico. Corexit® 9500 has been illegal in the United Kingdom since 1998 when it was determined to be harmful to the food chain and to persons who inhaled or ate food containing the substance.

14. Nalco Company is a foreign corporation that manufactures, sells, and supplies to BP dispersant chemicals, including Corexit® 9500.

15. Upon information and belief, BP has negligently and/or intentionally dumped, either by boat or by plane, over one million gallons of the toxic dispersant chemical on properties and waters along the Alabama Coast, and has caused the toxic chemicals to become a permanent part of the sea bed and food chain in the bio structure of the Gulf of Mexico, as well as a constant presence within the atmosphere surrounding the coast and Gulf of Mexico around the spill zone.

16. Plaintiffs and the Class Members live, travel, work and/or own/lease real estate along the Gulf Coast where the Defendants, upon information and belief, are conducting these chemical dumping operations.

17. Upon information and belief, the toxic dispersants were used deliberately in an attempt to lessen the financial burden of the Defendants and to lessen the public reaction to the

oil spill by forcing the oil to the bottom of the Gulf - thereby obviating the need for shoreline clean up and to hide the massive amounts of oil at the bottom of the Gulf.

18.  As a result of the Defendants' negligent, willful and wanton chemical dumping on and adjacent to the Plaintiffs, the Class Members, and their property, Plaintiffs and Class Members have been personally injured and their properties damaged.

19.  The Plaintiffs and Class Members' injuries and damages to their property were caused by the Defendants' negligent, willful, and/or wanton failure to manage and/or implement safe practices in their dumping operations.

20.  The Defendants knew of the dangers associated with dumping these toxic substances, but negligently, willfully and/or wantonly failed to take appropriate measures to prevent damage to the Plaintiffs, the Class Members and their properties

## V.  CLASS ACTION ALLEGATIONS

21.  Plaintiffs bring this action and each of the claims therein, on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), and (b)(3). Plaintiffs are duly representative and typical of the proposed members of the hereinafter described classes and/or sub-classes.

22.  Plaintiffs seek the certification of classes or subclasses as follows:

   a) All Alabama and Gulf Coast residents who live, travel or work in the Coastal Zone and who will suffer and have suffered from the deleterious effects of the Defendants' toxic oil remediation activities, including use of the toxic dispersant Corexit® 9500. This class further includes all Alabama and Gulf Coast residents who own, rent or lease residential or commercial property and/or personal property that has been or will in the future be damaged as a result of the Defendants' toxic oil spill remediation activities.

23.  Excluded from the Class are: (a) the officers and directors of any of the Defendants; (b) any entity or division in which any Defendant(s) has a controlling interest; (c)

any judge or judicial officer assigned to this matter and his or her immediate family; and (d) any legal representative of Defendants, successor, or assign or any excluded persons or entities.

24. Plaintiffs reserve the right to modify or amend the above referenced class definitions where appropriate.

25. The proposed class is so numerous that joinder is impractical. The disposition of the claims asserted herein through this class will be more efficient and will benefit the parties and the court.

26. There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to:

   a. Whether the Defendants caused and/or contributed to the toxic poisoning of the Gulf of Mexico;
   b. Whether Defendants' actions were negligent;
   c. Whether the Defendants' actions were wantonness;
   d. Whether Defendants' actions were intentional;
   e. Whether the chemicals have caused irreversible damage to the Gulf, real and personal property and human health in the Gulf Coast region;
   f. Whether the Defendants have interfered with the Plaintiffs and Class Members' use and enjoyment of their property;
   g. Whether the Defendants are liable for a trespass on the Plaintiffs and Class Members' property; and
   h. The amount of damages Plaintiffs and the Class Members should receive in compensation.

27. As a result of the Defendants' actions, the Plaintiffs have suffered harm and damage typical of the Class Members they wish to represent.

28. The Plaintiffs will fairly and adequately represent and protect the interest of the Class Members because their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have no claims antagonistic to those of the Class Members.

Plaintiffs have retained counsel competent and experienced in complex class actions and maritime and environmental litigation.

29. A class is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class Members is impracticable. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to this Court in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments and the prospect of a race for the courthouse and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expenses and delay to all parties and the court system in resolving the legal and factual issues common to all claims related to the Defendants' conduct alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale and comprehensive supervision by a single court.

30. The various claims asserted in the action are also certifiable under the provisions of Rule 23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

    a. The prosecution of separate actions by hundreds of individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, thus establishing incomparable standards for conduct for Defendants;

    b. The prosecution of separate actions by individual Class Members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the Class Members who are not parties to such adjudications and would substantially impair or impeded their ability to protect their interests; and

    c. The questions of law or fact common to the Members of the Class predominate over any questions affecting only individual Members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

VI. **CAUSES OF ACTION**

**FIRST COUNT**

**NEGLIGENCE / WANTONNESS**

31. The Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if stated herein.

32. The Defendants owed a duty to the Plaintiffs and the Class Members to exercise reasonable care in the implementation, management, oversight, training and operation of its oil spill remediation activities.

33. The Defendants owed a heightened duty of care to the Plaintiffs and the Class Members because of the great danger to person, property and the environment associated with exposure to toxic chemical substances in their oil spill remediation activities.

34. The Defendants breached their legal duty to the Plaintiffs and the Class Members by failing to exercise reasonable care and acting with negligent, willful, and wanton disregard for the Plaintiffs and the Class Members in the implementation, management, oversight, training and operation of its oil spill remediation activities.

35. Upon information and belief, the Plaintiffs and the Class Members aver that their person and property exposure to toxic substances as a result of the Defendants' oil spill remediation activities were caused by the negligence and fault of the Defendants in the following non-exclusive particulars:

    a. The implementation of toxic substances in the Defendants' oil spill remediation activities dangerous to the health and safety of person and property;

b. Operating or directing operation of cleanup activities in such a manner that exposed the Plaintiffs and the Class Members' property and person to the Defendants' toxic chemicals;

c. Failing to properly inspect the toxic dispersant chemicals or oil remediation equipment to assure they were fit for their intended purpose;

d. Acting in a careless and negligent manner without due regard for the safety of others;

e. Failure to promulgate, implement and enforce rules and regulations pertaining to the Defendants' oil spill remediation activities, that had they been so promulgated, implemented and enforced, would have averted the Plaintiffs and Class Members' exposure to the toxic dispersant chemicals;

f. Operating oil spill clean-up vessels, machinery and/or aircraft with untrained and/or unlicensed personnel;

g. Inadequate and negligent training and/or hiring of personnel;

h. Failing to take appropriate action to avoid and/or mitigate the Plaintiffs and the Class Members' exposure to the toxic dispersant chemicals;

i. Negligent implementation of policies and/or procedures to safely conduct oil spill remediation activities;

j. Failing to ascertain that the toxic dispersant chemicals were unreasonably dangerous to the Plaintiffs and Class Members' person or property;

k. Failing to ascertain that its oil spill remediation methodology was unreasonably dangerous to the Plaintiffs and Class Members' person or property;

l.  Failure to ascertain that the vessels, machinery and/or aircraft utilized to employ toxic dispersant chemicals were defective and/or not in proper working order;

m.  Failure to timely warn;

n.  Failure to timely bring the release of toxic chemical dispersants under control;

o.  Failure to adequately equip Plaintiffs and Class Members' person with necessary protective clothing from toxic chemical dispersants;

p.  Failure to observe signs, scientific treatises or reports that suggest exposure to toxic chemical dispersants was hazardous to person and property;

q.  Conducting oil spill remediation activities improperly;

r.  Acting in a manner that justifies imposition of punitive damages; and

s.  Such other acts of negligence and omissions as will be shown at the trial of this matter;

36. The Defendants knew or should have known that their negligent, willful, wanton and/or reckless conduct would foreseeably result in the toxic exposure of the Plaintiffs and Class Members' person and property to hazardous chemicals, causing injuries and damages to the Plaintiffs and Class Members.

37. The injuries to the Plaintiffs and Class Members were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations;

38. In addition, the exposure of hazardous chemical compounds to the Plaintiffs and Class Members' person and property would not have occurred had the Defendants exercised the

high degree of care imposed on them and Plaintiffs and Class Members, therefore, plead the doctrine of *res ipsa loquitor*.

39. Plaintiffs and Class Members are entitled to a judgment finding the Defendants liable to the Plaintiff and the Class Members for damages suffered as a result of the Defendants' negligence, willfulness, recklessness, and/or wantonness and awarding the Plaintiffs and Class Members adequate compensation, including punitive damages therefore in amounts determined by a jury, as well as liability for all appropriate medical monitoring relief required by the Plaintiffs and the Class Members.

## SECOND COUNT

## PRIVATE NUISANCE

40. The Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if stated herein.

41. The Defendants' acts and omissions with respect to the releases of toxic dispersant chemicals caused and/or continue to cause a material, substantial and/or unreasonable interference with the Plaintiffs and the Class Members' use and enjoyment of their properties, and has materially diminished and/or continues to diminish the value of such properties.

42. The Defendants' material, substantial, and/or unreasonable interferences with the use and enjoyment of the Plaintiffs and the Class Members' properties and/or continuing substantial and/or unreasonable interference with such use and/or enjoyment constitutes a continuing private nuisance.

43. The Defendants' creation and/or continuing creation of a continuing private nuisance proximately caused and/or continues to proximately cause damage to the Plaintiffs and

the Class Members in the form of bodily injury, emotional distress, and/or property damage, for which the Defendants are liable, including liability for all appropriate medical monitoring relief required by the Plaintiffs and the Class Members.

## THIRD COUNT

### PAST AND CONTINUING TRESPASS

44. The Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if stated herein.

45. The Defendants' intentional acts and/or omissions have resulted and continue to result in the unlawful release, threatened release and/or exposure of toxic dispersant chemicals at, under, onto, and/or into the Plaintiffs' bodies and/or lawfully possessed properties.

46. The toxic dispersant chemicals present on the Plaintiffs and the Class Members' and/or in their bodies originating from the Defendants' oil spill remediation activities were at all relevant times hereto, and continue to be, the property of the Defendants.

47. The invasion and presence of the toxic chemical dispersants at, under, onto, and/or into the Plaintiffs and the Class Members properties and/or bodies were and continue to be without permission or authority from the Plaintiffs and the Class Members or anyone who could grant such permission or authority.

48. The presence and continuing presence of toxic chemical dispersants in the Plaintiffs and the Class Members' properties and/or bodies constitutes a continuing trespass.

49. The Defendants' past and continuing trespass upon the Plaintiffs and the Class Members' properties and/or bodies has proximately caused and/or continues to proximately cause damage to the Plaintiffs and the Class Members in the form of bodily injury, emotional

distress and/or property damage, for which the Defendants are liable, including liability for all appropriate medical monitoring of the Plaintiffs and the Class Members.

## FOURTH COUNT

### PAST AND CONTINUING BATTERY

50. The Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if stated herein.

51. The Defendants' intentional acts and omissions have resulted and continue to result in the unlawful invasion, contact, and/or presence of toxic chemical dispersants with, onto, and/or into the Plaintiffs' bodies.

52. The Defendants' intentional acts and/or omissions were done with the knowledge and/or belief that the invasion, contact, and/or presence of toxic chemical dispersants with, onto, and/or into the Plaintiffs and the Class Members' bodies were substantially certain to result from those acts and/or omissions.

53. The toxic chemical dispersants that the Plaintiffs and the Class Members have ingested or otherwise been exposed to, or that are present in their bodies originating from the Defendants' oil spill remediation activities were at all relevant times hereto, and continue to be, the property of the Defendants.

54. The invasion, contact, and/or presence of toxic chemical dispersants with, onto, and/or into the Plaintiffs and the Class Members' bodies were and continue to be without permission or authority from the Plaintiffs and the Class Members, or anyone who could grant such permission or authority.

55. The presence and continuing invasion, contact, and/or presence of toxic chemical dispersants with, onto, and/or into the Plaintiffs and the Class Members bodies constitutes a continuing battery.

56. The Defendants' past and continuing battery upon the Plaintiffs and the Class Members' bodies proximately caused and continue to proximately cause damage to the Plaintiffs and the Class Members in the form or bodily injury, emotional distress and other damage, for which the Defendants are liable, including liability for all appropriate medical monitoring of the Plaintiffs and the Class Members.

## FIFTH COUNT

### MEDICAL MONITORING

57. The Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if stated herein.

58. As a direct result of the Defendants' actions, omissions, and negligence, the Plaintiffs and the Class Members have been put at a heightened risk of very serious health complications. The risk of death and serious health complications requires diagnostic medical examinations. By monitoring and testing the affected Plaintiffs and the Class Members, it can be determined whether they are prone to death and serious health complications as a result of the damages caused by the Defendants. Through such testing and monitoring, lives can be saved and human health complications treated.

59. Because the ingestion of this defectively manufactured drug poses significant health risks to the Plaintiffs and the Class Members, medical monitoring is the most appropriate method by which it can be determined whether a particular Plaintiff should be properly treated.

60. Accordingly, the Defendants should be required to establish a medical monitoring program that includes, *inter alia*:

   a. Establish a trust fund, in an amount to be determined to pay for the medical monitoring of all recipients of the defectively manufactured drug and, as frequently as determined to be medical necessary, as well as to pay development and/or research for other materials by which the risk of the chemicals in the dispersant can be reduced.

   b. Notifying all members of the Class in writing, not just notices to Doctors, that they have been exposed to toxic chemicals that that requires medical monitoring; and

   c. Providing information and/or educational training to treating physicians to aid them in detecting patients who may be suffering the adverse consequences of having inhaled or been in contact with the dispersant.

61. Plaintiff and the Class Members have no adequate remedy at law in that monetary damages alone cannot compensate them for the risk of unknown diseases and medical conditions. Without a Court-approved medical monitoring program, as described above, the Plaintiffs and the Class Members will continue to face an unreasonable risk to their health.

## VII. **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, individually and on behalf of all others similarly situated, demand judgment against the Defendants, jointly and severally as follows:

1. An order certifying the Class for the purpose of going forward with any one or all of the causes of action alleged herein, including appointing the Plaintiffs as Class Representatives; and appointing the undersigned counsel as counsel for the Class;

2. Economic and compensatory damages in amounts to be determined at trial;

3. Punitive damages;

4. Pre-judgment and post-judgment interest at the maximum rate allowable by law;

5. Attorney's fees and costs of litigation;

6. Medical monitoring liability;

7. Such other and further relief available under all applicable state and federal laws and any relief the court deems just and appropriate; and

8. A trial by jury as to all Defendants.

        Respectfully submitted by,

        s/Jere L. Beasley
        Jere L. Beasley (BEASJ1981)
        Rhon E. Jones (JONE7747)
        John E. Tomlinson (TOML4095)
        J. Parker Miller (MILLJ7363)
        BEASLEY, ALLEN, CROW,
        METHVIN, PORTIS & MILES, P.C.
        218 Commerce Street
        Montgomery, Alabama 36104
        (334) 269.2343
        jere.beasley@beasleyallen.com
        rhon.jones@beasleyallen.com
        john.tomlinson@beasleyallen.com
        parker.miller@beasleyallen.com

Dated: July 26, 2010

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues and causes of action stated herein.

Respectfully submitted,


/s Jere L. Beasley
Jere L. Beasley
Rhon E. Jones
John E. Tomlinson
J. Parker Miller
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, Alabama 36104
(334) 269.2343