IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GLYNIS H. WRIGHT; JANILLE TURNER; individually, and on behalf of themselves and all others similarly situated, | * * * * | |
| | * | Civil Action No. 1:10cv00397-B |
| Plaintiffs, | * | |
| versus | * | |
| | * | |
| BP, plc; BP PRODUCTS NORTH AMERICA, INC.; BP AMERICA, INC.; BP EXPLORATION & PRODUCTION, INC.; ANADARKO E&P COMPANY LP; ANADARKO PETROLEUM CORPORATION; HALLIBURTON ENERGY SERVICES, INC.; CAMERON INTERNATIONAL CORPORATION F/K/A COOPER CAMERON CORPORATION; MOEX OFFSHORE 2007 LLC; AND NALCO COMPANY, | * * * * * * * * * * * * | *Trial By Jury Requested* |
| Defendants. | * | |

## AMENDED CLASS ACTION COMPLAINT

### I.   INTRODUCTION

**1.**    COMES NOW, Plaintiffs Glynis H. Wright and Janille Turner (hereinafter "Plaintiffs"), individually and as representatives of the class defined herein (the "Class" or "Class Members"), and amend certain parties, facts and claims.  In further support, Plaintiffs aver as follows:

**2.**    This is a class action, brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, to recover compensatory and punitive damages sustained by the Plaintiffs and the Class Members as a result of Deepwater Horizon explosion, oil spill which occurred on April 20,

2010, including the oil spill remediation activities that subsequently followed. In addition, Plaintiffs seek to recover compensatory and punitive damages sustained as a result of the Defendants' wrongful conduct as explained in further detail herein.

3.      Since the Deepwater Horizon explosion on April 20, 2010 and the subsequent oil spill, millions of gallons of crude oil have invaded the water column of the Gulf of Mexico, its white sandy beaches and the fertile fishing grounds throughout the region. In attempting to avoid additional financial responsibility in shoreline restoration, the Defendants attempted to conceal the Deepwater Horizon oil spill by sinking the oil to the bottom of the ocean with toxic chemical dispersants. In the process, the Defendants have negligently, willfully and callously caused those dangerous toxic chemicals to enter and be released upon the Plaintiffs' person, as well as the Plaintiffs' and Class Members' properties, causing them to be injured and damaged as explained in further detail below.

## II.   JURISDICTION

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and because it is a class action brought by the citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business.

5.      Prosecution of this action in this district is proper under 28 U.S.C. § 1391(a)(2) because a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in the district and/or a substantial part of the property at issue in this action is situated in this district.

## III.   PARTIES

**6.** Plaintiff Janille Turner is over the age of 19 years and is a resident of Coden, Mobile County, Alabama. Plaintiff is a resident and property owner along the Gulf Coast, and as a result of the events described herein, has suffered damages that are more fully described below.

**7.** Plaintiff Glynis H. Wright is over the age of 19 years and is a resident of Orange Beach, Baldwin County, Alabama. Plaintiff is a resident and property owner along the Gulf Coast, and as a result of the events described herein, has suffered damages that are more fully described below.

**8.** The Defendants herein are:

    **1.** BP, plc ("BP" or "BP Defendants"), a foreign corporation doing business in the State of Alabama and within this district;

    **2.** BP Products North America, Inc. ("BP Products" or "BP Defendants"), a foreign corporation doing business in the State of Alabama and within this district;

    **3.** BP America, Inc. ("BP America" or "BP Defendants"), a foreign corporation doing business in the State of Alabama and within this district;

    **4.** BP Exploration & Production, Inc. ("BP Exploration" or "BP Defendants"), a foreign corporation doing business in the State of Alabama and within this district; and

    5. Anadarko E&P Company LP, a foreign company doing business in the State of Alabama and within this district;

    6. Anadarko Petroleum Corporation, a foreign company doing business in the State of Alabama and within this district;

7.  Halliburton Energy Services, Inc. ("Halliburton"), a foreign corporation doing business in the State of Alabama and within this district;

8.  Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron"), a foreign corporation doing business in the State of Alabama and within this district;

9.  MOEX Offshore 2007 LLC, a foreign corporation doing business in the State of Alabama and within this district; and

10. Nalco Company (Nalco), a foreign corporation doing business in the State of Alabama and within this district.

## IV.  <u>FACTUAL ASSERTIONS</u>

**9.**     On April 20, 2010, the Deepwater Horizon, an oil rig in the Gulf of Mexico, exploded and caught fire.  The rig burned for two days before completely capsizing into the ocean.  As the Deepwater Horizon sank, it broke off the riser connecting it to the Macondo well, leaving the severed pipe leaking oil out of its now-open end as well as through two breaks along its length.

**10.**    Since April 20, 2010, millions of gallons of oil have invaded the Gulf's water column, washed up on Alabama's shores and penetrated precious inlets and bays up and down the Gulf Coast. As a result, the oil spill has closed the Gulf's fertile fishing grounds – primarily along and around the Gulf States.  The environment, as well as fishing and tourist businesses that rely on the Gulf's white sandy beaches, clear waters, seafood and fertile fishing grounds, have been devastated from the spill.

**11.**    BP, plc, BP Products, BP America (Collectively "BP"), Anadarko E&P LP, Anadarko Petroleum Corporation, and MOEX Offshore 2007 LLC are the holders of a lease

granted by the Minerals Management Service that allows them to drill for oil and perform oil-production-related operations at the site of the oil spill, and on April 20, 2010, operated the oil well and Deepwater Horizon drilling platform that is the source of the current spill.  BP, Anadarko E&P Company LP, Anadarko Petroleum Corporation, and MOEX Offshore 2007 LLC, as lessees, are jointly and severally responsible for all activities aboard the Deepwater Horizon and at all material times hereto, manned, possessed, managed, controlled, chartered, retrofitted and/or operated the Deepwater Horizon oil rig.

12.     Upon information and belief, BP, Anadarko E&P LP, Anadarko Petroleum Corporation, and MOEX Offshore 2007 LLC's negligent and wantonness management and/or oversight of the Deepwater Horizon oil rig and its drilling operations caused, either in whole or in part, the destruction of the Deepwater Horizon drilling rig and the subsequent oil spill.

13.     Upon information and belief, Cameron manufactured and/or supplied the Deepwater Horizon's blow-out preventers ("BOPs"), a series of valves and seals designed to control pressure and prevent a catastrophic gas/oil explosion and resulting release of oil.  These valves and seals were defective and failed to operate as intended, and caused, either wholly or partially, the Deepwater Horizon explosion and oil spill.

14.     Halliburton was engaged in cementing operations of the well and well cap, and upon information and belief, improperly and/or negligently performed these duties, thereby increasing the pressure at the well, the invasion of dangerous gas and oil into the riser and drilling rig, and contributing to the fire, explosion and resulting oil spill.  Halliburton's improper and negligent failure to perform its cementing obligations in the well and well cap caused, either wholly or partially, the destruction of the Deepwater Horizon and subsequent oil spill.

15.     Upon information and belief, as a result of the significant oil release, Gulf Coast persons and properties have been and will continue to be exposed to toxic oil contamination and vapors emanating from the oil.

16.     At all times material hereto and upon information and belief, the Defendants have managed and/or directed oil remediation efforts in the Gulf of Mexico.

17.     As part of their remediation efforts, the BP Defendants have instituted the use of toxic chemical dispersants.  These chemicals are designed to sink and break up crude oil in the Gulf's waters but are hazardous to humans and marine life on the Gulf Coast.

18.     One such toxic chemical dispersant, Corexit® 9500, is more toxic than the oil itself causing an even more dangerous condition to exist in the Gulf of Mexico and properties adjacent thereto.

19.     Nalco Company is a foreign corporation that manufactures, sells, and supplies to BP dispersant chemicals, including Corexit® 9500.

20.     Upon information and belief, BP has negligently and/or intentionally dumped, either by boat or by plane, over one million gallons of the toxic dispersant chemical on properties and waters along the Alabama Coast, and has caused the toxic chemicals to become a permanent part of the sea bed and food chain in the bio structure of the Gulf of Mexico, as well as a constant presence within the atmosphere surrounding the coast and Gulf of Mexico around the spill zone.

21.     The presence of these chemicals in the Gulf Coast Environment has heightened the toxicity of the oil, and created an even more dangerous condition to exist for persons and property along the Gulf Coast region.

22.     Plaintiffs and the Class Members live, travel, work and/or own/lease real estate along the Gulf Coast where the Defendants' oil spill has impacted and where the Defendants are conducting these chemical dumping operations.

23.     Upon information and belief, the toxic dispersants were used deliberately in an attempt to lessen the financial burden of the Defendants and to lessen the public reaction to the oil spill - thereby obviating the need for shoreline clean up and to hide the massive amounts of oil on the ocean floor.

24.     The fire and explosion on the Deepwater Horizon, it sinking and the resulting oil spill were caused by the negligence of Defendants, which renders them liable jointly and severally to Plaintiffs for all damages.

25.     As a result of the Defendants' negligent, willful and/or wanton oil spill remediation activities, the Plaintiffs and Class Members have been damaged.

26.     The Plaintiffs Class Members' injuries and damages were caused by the Defendants' negligent, willful, and/or wanton failure to manage and/or implement safe practices aboard the Deepwater Horizon and in their oil spill remediation activities.

27.     The Defendants knew of the dangers associated with deepwater drilling and their oil spill remediation activities, but negligently, willfully and/or wantonly failed to take appropriate measures to prevent damage to the Plaintiffs and the Class Members.

## V.     CLASS ACTION ALLEGATIONS

28.     Besides their personal injury claims, Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), and (b)(3).   Plaintiffs are duly representative and typical of the proposed members of the hereinafter described classes and/or sub-classes.

29.     Plaintiffs seek the certification of classes or subclasses as follows:

a). All persons who own and/or operate businesses in Mobile and/or Baldwin Counties, Alabama, who have suffered or will in the future suffer any legally cognizable businesses and/or economic losses and/or damages as a result of the April 20, 2010 fire and explosion which occurred aboard the Deepwater Horizon drilling rig, the oil spill subsequently resulting there from, and the Defendants' oil spill remediation activities.

b). All persons who own, rent or lease properties in Mobile and/or Baldwin Counties, Alabama, whose property has suffered or will in the future suffer any legally cognizable losses and/or damages as a result of the April 20, 2010 fire and explosion which occurred aboard the Deepwater Horizon drilling rig, the oil spill subsequently resulting there from, and the Defendants' oil spill remediation activities.

30.     Excluded from the Class are:  (a) the officers and directors of any of the Defendants; (b) any entity or division in which any Defendant(s) has a controlling interest; (c) any judge or judicial officer assigned to this matter and his or her immediate family; and (d) any legal representative of Defendants, successor, or assign or any excluded persons or entities.

31.     Plaintiffs reserve the right to modify or amend the above referenced class definitions where appropriate.

32.     The proposed class is so numerous that joinder is impractical.  The disposition of the claims asserted herein through this class will be more efficient and will benefit the parties and the court.

33.     There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to:

1.   Whether Defendants' actions were negligent;
2.   Whether the Defendants' actions were wanton;
3.   Whether Defendants' actions were intentional;
4.   Whether the Defendants' oil spill and remediation activities have caused damage to the Plaintiffs and Class Members.

5. Whether the Defendants have interfered with the Plaintiffs and Class Members' use and enjoyment of their property;

6. Whether the Defendants are liable for a trespass on the Plaintiffs and Class Members' property; and

7. The amount of damages Plaintiffs and the Class Members should receive in compensation.

34. As a result of the Defendants' actions, the Plaintiffs have suffered harm and damage typical of the Class Members they wish to represent.

35. The Plaintiffs will fairly and adequately represent and protect the interest of the Class Members because their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have no claims antagonistic to those of the Class Members. Plaintiffs have retained counsel competent and experienced in complex class actions and maritime and environmental litigation.

36. A class is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class Members is impracticable. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to this Court in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments and the prospect of a race for the courthouse and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expenses and delay to all parties and the court system in resolving the legal and factual issues common to all claims related to the Defendants' conduct alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale and comprehensive supervision by a single court.

37. The various claims asserted in the action are also certifiable under the provisions of Rule 23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

9

1. The prosecution of separate actions by hundreds of individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, thus establishing incomparable standards for conduct for Defendants;

2. The prosecution of separate actions by individual Class Members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the Class Members who are not parties to such adjudications and would substantially impair or impeded their ability to protect their interests; and

3. The questions of law or fact common to the Members of the Class predominate over any questions affecting only individual Members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## VI.  CAUSES OF ACTION

### FIRST COUNT

### NEGLIGENCE / WANTONNESS

### *Operation of Deepwater Horizon Oil Rig*

38.     Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if copied herein.

39.     Defendants owed a duty to Plaintiffs and the Class Members to exercise reasonable care in the construction, operation, inspection, training, repair and maintenance of the Deepwater Horizon and oil well.

40.     Defendants had a heightened duty of care to Plaintiffs and the Class Members because of the great danger and environmental concerns associated with the drilling of oil.

41.     Defendants breached their legal duty to Plaintiffs and the Class Members by failing to exercise reasonable care and acting with reckless, willful, and wanton disregard for Plaintiffs and the Class Members in the construction, operation, inspection, training, repair and

maintenance of the Deep Water Horizon and the oil well.  The fire, explosion, and resulting oil spill were caused by the concurrent negligence of the Defendants.

42.     Upon information and belief, Plaintiffs and Class Members aver that the fire, explosion and resulting oil spill was caused by the joint negligence and fault of the Defendants in the following non-exclusive particulars:

1.   Failing to properly operate the Deepwater Horizon and oil well;

2.   Operating the Deepwater Horizon and oil well in such a manner that a fire and explosion occurred onboard, causing it to sink and resulting in an oil spill;

3.   Failing to properly inspect the Deepwater Horizon and oil well to assure that its equipment and personnel were fit for their intended purpose;

4.   Acting in a careless and negligent manner without due regard for the safety of others;

5.   Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon and oil well which, if they had been so promulgated, implemented and enforced, would have averted the fire, explosion sinking and oil spill;

6.   Operating the Deepwater Horizon and oil well with untrained and/or unlicensed personnel;

7.   Inadequate and negligent training and/or hiring of personnel;

8.   Failing to take appropriate action to avoid and/or mitigate the accident;

9.   Negligent implementation of policies and/or procedures to safely conduct offshore operations in the Gulf of Mexico;

10. Employing untrained or poorly trained employees and failing to properly train their employees;

11. Failing to ascertain that the Deepwater Horizon and oil well and its equipment were free from defects and/or in proper working order;

12. Failure to timely warn;

13. Failure to timely bring the oil release under control;

14. Failure to provide appropriate accident preventive equipment;

15. Failure to observe and read gauges that would have indicated excessive pressures in the well;

16. Failure to react to danger signs;

17. Failure to maintain appropriate spill remediation technologies or personnel;

18. Improper installation, maintenance and operation of BOPs or use of defective BOPs;

19. Conducting well and well cap cementing operations improperly;

20. Acting in a manner that justifies imposition of punitive damages; and

21. Such other acts of negligence and omissions as will be shown at the trial of this matter;

**43.** The Defendants knew or should have known that their negligent, willful, wanton and/or reckless conduct would foreseeably result in the disaster, causing damage to Plaintiffs and Class Members.

**44.** The injuries to the Plaintiffs and the Class Members were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations.

45.     In addition, the fire, explosion, sinking and the resulting oil spill would not have occurred had the Defendants exercised the high degree of care imposed on them and the Plaintiffs and Class Members, therefore, plead the doctrine of *res ipsa loquitur*.

46.     The Plaintiffs and Class Members are entitled to a judgment finding Defendants liable for damages suffered as a result of Defendants' negligence, willfulness, recklessness, and/or wantonness and awarding the Plaintiffs and Class Members adequate compensation, including punitive damages therefore in amounts determined by a jury.

## SECOND COUNT

## NEGLIGENCE / WANTONNESS

### *Oil Spill Remediation Activities*

47.     The Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if stated herein.

48.     The Defendants owed a duty to the Plaintiffs and the Class Members to exercise reasonable care in the implementation, management, oversight, training and operation of its oil spill remediation activities.

49.     The Defendants owed a heightened duty of care to the Plaintiffs and the Class Members because of the great danger to person, property and the environment associated with exposure to toxic chemical substances in their oil spill remediation activities.

50.     The Defendants breached their legal duty to the Plaintiffs and the Class Members by failing to exercise reasonable care and acting with negligent, willful, and wanton disregard for the Plaintiffs and the Class Members in the implementation, management, oversight, training and operation of its oil spill remediation activities.

51.     Upon information and belief, the Plaintiffs and the Class Members aver that the Defendants' oil spill remediation activities were conducted in a negligent, willful and wanton manner in the following non-exclusive particulars:

1.  The implementation of toxic substances in the Defendants' oil spill remediation activities dangerous to the health and safety of person and property;

2.   Operating or directing operation of cleanup activities in such a manner that exposed the Plaintiffs and the Class Members' property and person to the Defendants' toxic chemicals;

3.  Failing to properly inspect the toxic dispersant chemicals or oil remediation equipment to assure they were fit for their intended purpose;

4.  Acting in a careless and negligent manner without due regard for the safety of others;

5.  Failure to promulgate, implement and enforce rules and regulations pertaining to the Defendants' oil spill remediation activities, that had they been so promulgated, implemented and enforced, would have averted the Plaintiffs and Class Members' exposure to the toxic dispersant chemicals;

6.  Operating oil spill clean-up vessels, machinery and/or aircraft with untrained and/or unlicensed personnel;

7.  Inadequate and negligent training and/or hiring of personnel;

8.  Failing to take appropriate action to avoid and/or mitigate the Plaintiffs and the Class Members' exposure to the toxic dispersant chemicals;

9. Negligent implementation of policies and/or procedures to safely conduct oil spill remediation activities;

10. Failing to ascertain that the toxic dispersant chemicals were unreasonably dangerous to the Plaintiffs and Class Members' person or property;

11. Failing to ascertain that its oil spill remediation methodology was unreasonably dangerous to the Plaintiffs and Class Members' person or property;

12. Failure to ascertain that the vessels, machinery and/or aircraft utilized to employ toxic dispersant chemicals were defective and/or not in proper working order;

13. Failure to timely warn;

14. Failure to timely bring the release of toxic chemical dispersants under control;

15. Failure to adequately equip Plaintiffs and Class Members' person with necessary protective clothing from toxic chemical dispersants;

16. Failure to observe signs, scientific treatises or reports that suggest exposure to toxic chemical dispersants was hazardous to person and property;

17. Conducting oil spill remediation activities improperly;

18. Acting in a manner that justifies imposition of punitive damages; and

19. Such other acts of negligence and omissions as will be shown at the trial of this matter;

**52.**     The Defendants knew or should have known that their negligent, willful, wanton and/or reckless conduct would foreseeably result in the toxic exposure of the Plaintiffs and Class

Members' person and property to hazardous chemicals, causing injuries and damages to the Plaintiffs and Class Members.

53.     The injuries to the Plaintiffs and Class Members were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations;

54.     In addition, the exposure of hazardous chemical compounds to the Plaintiffs and Class Members' person and property would not have occurred had the Defendants exercised the high degree of care imposed on them and Plaintiffs and Class Members, therefore, plead the doctrine of *res ipsa loquitor*.

55.     Plaintiffs and Class Members are entitled to a judgment finding the Defendants liable to the Plaintiff and the Class Members for damages suffered as a result of the Defendants' negligence, willfulness, recklessness, and/or wantonness and awarding the Plaintiffs and Class Members adequate compensation, including punitive damages therefore in amounts determined by a jury.

## THIRD COUNT

## PRIVATE NUISANCE

56.     The Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if stated herein.

57.     The Defendants' acts and omissions with respect to the releases of toxic chemicals caused and/or continue to cause a material, substantial and/or unreasonable interference with the Plaintiffs and the Class Members' use and enjoyment of their properties, and has materially diminished and/or continues to diminish the value of such properties.

58.    The Defendants' material, substantial, and/or unreasonable interferences with the use and enjoyment of the Plaintiffs and the Class Members' properties and/or continuing substantial and/or unreasonable interference with such use and/or enjoyment constitutes a continuing private nuisance.

59.    The Defendants' creation and/or continuing creation of a continuing private nuisance proximately caused and/or continues to cause damage to the Plaintiffs and the Class Members.

60.    The Plaintiffs and Class Members are entitled to a judgment finding the Defendants liable to the Plaintiff and the Class Members for damages suffered as a result of the nuisance created by the Defendants', and awarding the Plaintiffs and Class Members adequate compensation, including punitive damages therefore in amounts determined by a jury.

## FOURTH COUNT

## PAST AND CONTINUING TRESPASS

61.    The Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if stated herein.

62.    The Defendants' intentional acts and/or omissions have resulted and continue to result in the unlawful release, threatened release and/or exposure of oil vapors and/or toxic dispersant chemicals at, under, onto, and/or into the Plaintiffs' bodies, as well as the Plaintiffs and Class Members' lawfully possessed properties.

63.    The toxic dispersant and/or oil vapor chemicals present on and/or in the Plaintiffs bodies, as well as the Plaintiffs and Class Members' lawfully possessed properties originating

from the Defendants' oil spill and remediation activities were at all relevant times hereto, and continue to be, the property of the Defendants.

64.    The invasion and presence of the toxic chemical dispersants at, under, onto, and/or into the Plaintiffs and/or bodies, as well as the Plaintiffs and Class Members' lawfully possessed properties, were and continue to be without permission or authority from the Plaintiffs and Class Members or anyone who could grant such permission or authority.

65.    The presence and continuing presence of toxic chemical dispersants in the Plaintiffs bodies, as well as the Plaintiffs and Class Members' lawfully possessed properties, constitutes a continuing trespass.

66.    The Defendants' past and continuing trespass upon the Plaintiffs' bodies, as well as the Plaintiffs and Class Members' lawfully possessed properties, has proximately caused and/or continues to cause damage to the Plaintiffs and to the Class Members.

67.    The Plaintiffs and Class Members are entitled to a judgment finding the Defendants liable to the Plaintiff and the Class Members for damages suffered as a result of the Defendants' trespass, and awarding the Plaintiffs and Class Members adequate compensation, including punitive damages therefore in amounts determined by a jury.

## FOURTH COUNT

## PAST AND CONTINUING BATTERY

68.    The Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if stated herein.

69.     The Defendants' intentional acts and omissions have resulted and continue to result in the unlawful invasion, contact, and/or presence of toxic chemicals with, onto, and/or into the Plaintiffs' bodies.

70.     The Defendants' intentional acts and/or omissions were done with the knowledge and/or belief that the invasion, contact, and/or presence of toxic chemicals with, onto, and/or into the Plaintiffs' bodies were substantially certain to result from those acts and/or omissions.

71.     The toxic chemical dispersants that the Plaintiffs have ingested or otherwise been exposed to, or that are present in their bodies originating from the Defendants' oil spill remediation activities were at all relevant times hereto, and continue to be, the property of the Defendants.

72.     The invasion, contact, and/or presence of toxic chemicals with, onto, and/or into the Plaintiffs' bodies were and continue to be without permission or authority from the Plaintiffs, or anyone who could grant such permission or authority.

73.     The presence and continuing invasion, contact, and/or presence of toxic chemicals with, onto, and/or into the Plaintiffs' bodies constitutes a continuing battery.

74.     The Defendants' past and continuing battery upon the Plaintiffs' bodies proximately caused and continue to proximately cause damage to the Plaintiffs the form or bodily injury, emotional distress and other damage, for which the Defendants are liable.

## VII.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, individually and on behalf of all others similarly situated, demand judgment against the Defendants, jointly and severally as follows:

1. With the exception of Plaintiffs' personal injury claims, an order certifying the Class for the purpose of going forward with any one or all of the causes of action

alleged herein, including appointing the Plaintiffs as Class Representatives; and
appointing the undersigned counsel as counsel for the Class;

2. Economic and compensatory damages in amounts to be determined at trial;

3. Punitive damages;

4. Pre-judgment and post-judgment interest at the maximum rate allowable by law;

5. Attorney's fees and costs of litigation;

6. Such other and further relief available under all applicable state and federal laws
and any relief the court deems just and appropriate; and

7. A trial by jury as to all Defendants.

Moreover, Plaintiffs demand judgment on behalf of themselves individually against the
Defendants, jointly and severally as follows:

1. Economic and compensatory damages for personal injuries in amounts to be
determined at trial;

2. Medical expenses past and future;

3. Temporary and permanent impairment;

4. Lost wages and loss of earning capacity;

5. Pain and suffering;

6. Mental anguish;

7. Punitive damages;

8. Pre-judgment and post-judgment interest at the maximum rate allowable by law;

9. Attorney's fees and costs of litigation;

10. Such other and further relief available under all applicable state and federal laws
and any relief the court deems just and appropriate; and

11. A trial by jury as to all Defendants.

Respectfully submitted by,

s/J. Parker Miller
Jere L. Beasley (BEASJ1981)
Rhon E. Jones (JONE7747)
John E. Tomlinson (TOML4095)
J. Parker Miller (MILLJ7363)
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, Alabama 36104
(334) 269.2343
jere.beasley@beasleyallen.com
rhon.jones@beasleyallen.com
john.tomlinson@beasleyallen.com
parker.miller@beasleyallen.com

Dated:  August 19, 2010

**TRIAL BY JURY REQUESTED**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 19th day of August, 2010, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to counsel of record for all parties.

Respectfully submitted,


<u>/s J. Parker Miller</u>
Jere L. Beasley
Rhon E. Jones
John E. Tomlinson
J. Parker Miller
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, Alabama 36104
(334) 269.2343